UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| APRIL EASON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 4:17-cv-00757-JHE |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION[1]

Plaintiff April Eason ("Eason") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), partially granting her application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). (Doc. 1). Eason timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. § 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

Eason filed an application for a period of disability and DIB on February 17, 2011, and protectively filed an application for SSI on May 10, 2013. (Tr. 157, 376-82, 404-09). Both applications alleged an onset date of September 1, 2010.[2] (*Id.*). On May 10, 2011, the

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties in this case have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 20).

[2] Eason later amended her onset date to November 8, 2011. (Tr. 523)

Commissioner denied both claims, (tr. 145), and on June 8, 2011, Eason requested a hearing before an ALJ, (tr. 184-85). On March 6, 2013, the ALJ held a hearing, (tr. 82-144), and subsequently denied Eason's claim on June 28, 2013, (tr. 154-73). Eason sought review by the Appeals Council, which vacated and remanded the case on June 27, 2014 due to the ALJ's failure to proffer to Eason and her counsel a consultative examination report used in his decision. (Tr. 174-77). On remand, the ALJ held a second hearing on March 26, 2015. (Tr. 45-81). On July 14, 2015, the ALJ issued a partially favorable decision, finding Eason became disabled on May 1, 2014. (Tr. 18-44). Eason again sought review by the Appeals Council, but it denied her request for review on March 7, 2017. (Tr. 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. On May 9, 2017, Eason initiated this action. (Doc. 1).

On the date the ALJ rendered his decision, Eason was fifty years old, with at least a high school education and previous work as a retail inspector, purchasing agent, and a receiving clerk. (Tr. 34, 69, 376).

## II. Standard of Review[3]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is

---

[3] In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which

---

[4] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

"must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Eason met the insured status requirements of the Social Security Act through December 31, 2015, and that Eason had not engaged in substantial gainful activity since her alleged onset date. (Tr. 24). At Step Two, the ALJ found Eason had the following severe impairments since her amended onset date of November 8, 2011: coronary artery disease

4

status post 3 bypass grafts; chronic systolic heart failure; hypertension; obesity; diabetes mellitus II with neuropathy; non-proliferative diabetic retinopathy with cataracts and glaucoma; chronic obstructive pulmonary disease ("COPD"); multi-level degenerative disc disease, throughout the spine with lumbar herniated nucleus pulpous and radiculopathy; tendinosis of the rotator cuff; anxiety disorder; mood disorder; bereavement; and personality disorder. (Tr. 25). At Step Three, the ALJ found Eason does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*).

Before proceeding to Step Four, the ALJ determined Eason's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that, prior to May 1, 2014, Eason had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except [she] can never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. In addition, she can occasionally operate foot controls bilaterally. [She] must avoid exposure to concentrated levels of extreme temperatures, operational control of moving machinery, unprotected heights, and hazardous machinery. She further is limited to performing simple, routine, and repetitive tasks in a low stress environment, which is defined as requiring occasional decision-making and having occasional changes in the work setting. Moreover, [she] is limited to having only occasional interaction with coworkers and the public.

(Tr. 28). The ALJ also determined that, after May 1, 2014, Eason had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except [she] will need to have the option to sit or stand at will, with a need to lay down on numerous occasions throughout the day. She can never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. In addition, she can occasionally operate foot controls bilaterally. [She] must avoid exposure to concentrated levels of extreme temperatures, operational control of moving machinery, unprotected heights, and hazardous machinery. She further is limited to performing simple, routine, and repetitive tasks in a low stress environment, which is defined as requiring occasional decision-making and having occasional changes in the work setting. Moreover, [she] is limited to having only occasional interaction with coworkers and the public.

5

(Tr. 33-34).

At Step Four, the ALJ determined Eason has been unable to perform any past relevant work since her amended onset date. (Tr. 23). At Step Five, the ALJ determined that, considering Eason's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Eason could have performed prior to May 1, 2014. (Tr. 35-36). However, he concluded there were no such jobs Eason could perform after May 1, 2014. (Tr. 36). Therefore, the ALJ concluded Eason was not disabled prior to May 1, 2014, but became disabled on that date and has continued to be disabled through the date of the decision. (*Id*.). The ALJ issued a partially favorable decision, awarding a period of disability, DIB, and SSI beginning on May 1, 2014. (Tr. 37).

**V. Analysis**

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Eason argues the Commissioner's decision should be reversed on four grounds: (1) the decision to limit benefits to after May 1, 2014, is not based on substantial evidence; (2) the ALJ failed to state adequate reasons for finding Eason not credible; (3) the ALJ improperly drew an adverse inference from Eason's lack of medical treatment; and (4) the ALJ failed to adequately

consider Eason's testimony regarding the side effects of her pain medication. (Doc. 2, 30-31). The last three of these errors relate to the ALJ's credibility assessment, and are addressed together.

**A. Substantial Evidence Supports the ALJ's Decision to Limit Eason's Benefits to After May 1, 2014**

In a conclusory fashion, Eason contends it was error for the ALJ to limit benefits until after May 1, 2014, because "there is no logical distinction in [her] condition prior to 5/1/14 and after 5/1/14." (Doc. 16 at 30). She points generally to a seventeen-page summary of the medical evidence in this case. (Doc. 16 at 30).

The ALJ's decision explicitly sets out his rationale for finding Eason's disability began on May 1, 2014. (Tr. 34). Specifically, the ALJ noted that, on that date, Eason underwent an echocardiogram ("EKG") that showed global hypokinesis with ejection fraction of 35-40%, along with some thickiening of the aortal valve leaflets. (Tr. 34, 1090-91). Because her ejection fraction was in the 30s, Eason's primary care physician, Dr. David Farrar, found Eason should be evaluated for possible defibrillator implantation. (Tr. 1091). As the Commissioner points out, this EKG differs greatly from an EKG taken on November 10, 2011, which found a significantly higher (64%) ejection fraction. (*See* tr. 798).

Further, on May 7, 2014, Dr. Jay Ripka evaluated Eason, finding she would need to change positions every ten to fifteen minutes, would need a break every fifteen minutes, and would need to lie down or prop her legs up to waist level six hours per day. (Tr. 1024). Taking the new EKG into consideration, the ALJ gave substantive weight to this assessment. (Tr. 34). The ALJ also found subsequent evidence supported Dr. Ripka's opinion, as a March 2015 MRI revealed enlargement of the L5-S1 disk protrusion with likely neural encroachment. (*Id.*).

7

Rather than choosing an arbitrary date, as Eason alleges, the ALJ pointed to a specific medical event that signaled her disability. Neither Eason's brief in support of disability nor her reply brief acknowledge the EKG,[5] and Eason has offered nothing to support the ALJ's decision to rely on the EKG as the cutoff point between non-disability and disability was arbitrary. On the contrary, his decision to do so was supported by substantial evidence.

Eason also argues the ALJ erred when he declined to pose a hypothetical to the vocational expert ("VE") at the second, post-remand hearing, instead relying on the VE's response to a hypothetical from the first, pre-remand hearing to conclude there were jobs in the national economy she could have performed prior to May 1, 2014. (Doc. 16 at 30-31). In order for a VE's testimony "to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). Eason generally contends the hypothetical did not take into account her impairments "at the time the residual functional capacity was applicable," but does not offer any reason, evidence, or legal authority to support the hypothetical would have changed between the pre- and post-remand hearings. To the extent Eason argues the ALJ ought to have found her disabled prior to May 1, 2014 based on her testimony about her limitations, this contention is addressed and rejected below. To the extent Eason argues the timing of the hearings otherwise impacted the hypothetical, the first hearing took place on March 6, 2013, approximately fourteen months prior to the date on which the ALJ found Eason was disabled. There is no evidence to support a change in the economy that would have impacted the VE's answer in that intervening fourteen months. In either case, the ALJ did not err by declining to pose additional hypotheticals to the VE at the second hearing.

---

[5] Eason's reply brief simply reiterates the arguments from her brief in support of disability and makes no attempt to respond to the Commissioner's arguments.

## B. The ALJ's Credibility Determination Was Supported by Substantial Evidence

Next, Eason argues the ALJ improperly discredited her testimony. The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Subjective testimony supported by medical evidence satisfying the standard is sufficient to support a finding of disability. *Id.* However, the ALJ may still make a credibility determination on the claimant's statements about the intensity and effect of that pain. *See Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Hogard v. Sullivan*, 733 F.Supp. 1465, 1469 (M.D. Fla. 1990). The ALJ's adverse credibility determination must be supported by "explicit and adequate reasons," *Holt*, 921 F.2d at 1223, and substantial evidence, *see Foote*, 67 F.3d at 1561-62. An ALJ's clearly articulated credibility determination will not be disturbed if supported by substantial evidence. *Petteway v. Comm'r of Soc. Sec.*, 353 Fed.Appx. 287, 288 (11th Cir. 2009).

When evaluating the credibility of a claimant's statements regarding the intensity, persistence, or limiting effects of his symptoms, the ALJ considers all evidence, objective and subjective. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 364186 at * 4-5. The ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's method of treatment, a claimant's activities, and any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 96-7p, 1996 WL 364186 at * 4-8. If an ALJ discredits a claimant's subjective complaints, "he must

9

articulate explicit and adequate reasons for doing so." *Wilson v. Comm'r of Soc. Sec.*, 284 F.3d 1219, 1225 (11th Cir. 2002). "[I]f a credibility determination is inadequate, a remand to the agency for further consideration is the proper remedy." *Carpenter v. Astrue*, No. 8:10-CV-290-T-TGW, 2011 WL 767652 (M.D. Fla. Feb. 25, 2011). *See also Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011) (retreating from *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986), based on the prior precedent rule, and remanding to the agency).

After considering the evidence, the ALJ cited the appropriate standard, finding "the claimant's medically determinable impairments could reasonable have been expected to produce the alleged symptoms, but prior to May 1, 2014, the alleged intensity, persistence, duration, and impact on functioning are not credible or consistent with the totality of the evidence." (Tr. 29). The record contains substantial evidence to support this determination.

The ALJ found Eason had provided inconsistent testimony about her activities of daily living. Specifically, he pointed to Eason's 2013 reports of extreme limitations (inability to tie her shoes, (tr. 114), babysit her grandchildren, (tr. 91), and do household tasks like cooking and washing dishes, (tr. 115-16)), which were dramatically worse than her reported abilities in 2011 (when she stated she could occasionally clean her house, cook, do laundry, drive, shop in stores, and care for her personal needs, (tr. 446-53)). (Tr. 29, 32). Eason points to *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997), for the proposition that "participation in activities of short duration, such as housework or fishing" does not disqualify a claimant from disability. However, the ALJ did not consider Eason's daily activities to be dispositive of disability; instead, he stated her inconsistent claims of limitations bears on her credibility, and supports (along with other evidence, discussed below) she could perform unskilled, sedentary work. (Tr. 29, 32). It was not improper for the ALJ to do so. *See* 20 C.F.R. §§ 404.1529(c)(3-4), 416.929(c)(3-4); SSR 96-7p.

*See also Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) ("The regulations do not . . . prevent the ALJ from considering daily activities at the fourth step of the sequential evaluation process."). Eason also quotes her reported activities from 2011, implying (but not directly stating) the ALJ mischaracterized them. (Doc. 16 at 39). The quotes Eason supplies are not inconsistent with the ALJ's characterization that Eason "occasionally" engaged in the cited activities.

The ALJ also found Eason's credibility was undermined by the opinions of Dr. Christopher Bailey, Eason's treating physician. (Tr. 30). The ALJ highlighted several visits to Dr. Bailey at which he questioned her subjective symptoms. On May 22, 2012, Eason visited Dr. Bailey for a routine follow-up. (Tr. 726). In response to Eason's reports of pain, Dr. Bailey noted "She is very adamant about pain control. It seems to outweigh all of her other issues." (*Id.*). Dr. Bailey prescribed 40 Lortab (in contrast to the 90 she had received from her previous doctor) and stated he refused to prescribe additional narcotic pain medications, preferring to "get [Eason] into pain management" instead. (*Id.*).

In December 2012, Eason again presented for a follow-up visit, reporting pain "all over" and requesting Lortab. (Tr. 738). Dr. Bailey stated Eason was unwilling to go to psychiatric services, although he had tried to refer her, and that Eason cannot afford to go to pain management. (Tr. 738-39). Nevertheless, Dr. Bailey stated he wanted to get her help, although "I really do not know what else to do with her and do not want to go down the road of prescribing her opiates and feeding her seemingly addictive behavior." (Tr. 739). Dr. Bailey also opined Eason was poorly compliant with her diabetes treatment, drinking three Cokes per day. (Tr. 736-37).

On February 12, 2013, Eason presented "in search of disability." (Tr. 808). Dr. Bailey again noted he had asked Eason to go to a pain specialist, but she never went. (*Id.*). Dr. Bailey observed Eason "does not have a job and does not desire to work. She is actually seeking

11

disability." (id.). Dr. Bailey opined Eason's mental health would improve if she would "become more active, take better care of her health, quit smoking, become more involved in the community, get a job, and be a productive citizen." (Tr. 809). Dr. Bailey "did not see any reason why [Eason] should be labeled disabled." (Tr. 810).

On a February 21, 2013 visit to Dr. Bailey, Eason presented for a one-week follow-up for back pain. (Tr. 801). Dr. Bailey noted Eason had not been to pain management — and did not "seem interested in Pain Management and seemed apathetic regarding this, which is somewhat concerning" — and that Eason exhibited "pain-seeking behavior." (*Id.*). Dr. Bailey opined that Eason "continues to mention disability; however, I believe she is capable of working." (Tr. 801).

Eason challenges the ALJ's reliance on Dr. Bailey's opinion, arguing her failure to act on his referrals to pain management show that pain medication was not her only goal. (Doc. 16 at 39). This does not follow. Dr. Bailey repeatedly presented pain management as an alternative to narcotic medication — the medication Eason was seeking. (Tr. 726, 739, 801). Dr. Bailey also noted his intention in referring Eason to a pain specialist was so that she could receive an epidural block rather than medication. (Tr. 809). Eason also contends her regular filling of medications used to treat other conditions shows her seeking of pain medication did not "outweigh all of her other issues," (doc. 16 at 40), but this argument only makes sense under the most obtuse reading of Dr. Bailey's observation. Eason's desire to obtain narcotic pain medications on her visits to Dr. Bailey is not undermined by the fact she sought treatment and obtained medication for other conditions at the same time.

Eason argues the ALJ improperly drew an adverse inference from her failure to seek treatment. In the Eleventh Circuit, "refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability . . . [but] poverty excuses noncompliance." *Dawkins*

12

*v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988). "[W]hen an ALJ relies on noncompliance as the sole ground for the denial of disability benefits, and the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was able to afford the prescribed treatment." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). However, an ALJ's determination a claimant is not disabled is not reversible error when it is not <u>significantly</u> based on a finding of noncompliance. *Id*.

Eason points to her testimony, in response to the ALJ's questions about Dr. Bailey's observation she exhibited pain-seeking behavior, that she could not afford pain management, (tr. 108-09). Notably, however, to the extent this is a finding of noncompliance (as opposed to seeking one form of treatment over another) and an adverse inference, the finding and inference here were made by Dr. Bailey, not the ALJ. This is similar to *Ellison*, in which the ALJ failed to consider the claimant's ability to pay for medication, but the Eleventh Circuit found his decision to discredit the claimant's testimony was nevertheless supported by a physician's observation that noncompliance was an explanation for the claimant's symptoms. *Ellison*, 355 F.3d at 1275-76. However, even accepting the ALJ erred in finding noncompliance based on failure to seek pain management or counseling, Dr. Bailey's opinions unrelated to Eason's noncompliance are sufficient to support the ALJ properly relied on him in making his credibility determination. As discussed above, Dr. Bailey repeatedly opined he believed Eason was capable of work despite her symptoms (and despite the fact she was seeking disability).

Eason also points to the ALJ's statement that "the record remains bare of substantive mental health care since 2013," (tr. 27), noting she testified she could not afford mental health care. (Doc. 16 at 41-43). To the extent this single line can be extrapolated to an adverse credibility determination, the ALJ primarily relied on the report of psychological consultative examiner Dr.

13

April Waltz for his decision that Eason's mental impairments were not disabling. (Tr. 27, 30-31). After examining Eason on April 30, 2013, Dr. Waltz determined Eason has a mental impairment present to a moderate degree. (Tr. 829). Dr. Waltz opined Eason could function primarily independently, could understand, carry out, and remember instructions, and could respond appropriately to supervision, co-workers, and work pressure in a work setting, notwithstanding her mental impairment. (*Id*.). It was not error for the ALJ to rely on Dr. Waltz's opinion to determine Eason's mental symptoms were not as debilitating as she alleged, nor to conclude, due to the absence of medical records after Dr. Waltz's assessment, Eason's condition had not changed since this point. And even if the ALJ improperly found the lack of records of mental health treatment after 2013 undermined Eason's credibility notwithstanding her inability to afford treatment, his disability determination was not significantly based on this finding such that it warrants reversal. *Ellison*, 355 F.3d at 1275.

Finally, Eason argues the ALJ erred by failing to account for her medications' side effects. (Doc. 16 at 45-46). Specifically, she argues the ALJ failed to develop the record with regard to those side effects, which she testified "make her feel like a zombie or something" when she takes her medication. (Tr. 107). "Under certain circumstances, an ALJ's duty to develop a full record can include investigating the side effects of medications." *Walker v. Comm'r of Soc. Sec.*, 404 F. App'x 362, 366 (11th Cir. 2010) (citation omitted). However, it is still the claimant's burden to introduce evidence supporting her claim that her symptoms (including any medication side effects) make her unable to work. *Id*. (citing *Ellison*, 355 F.3d at 1276). Although the ALJ did not specifically mention side effects, his decision states he has "considered all symptoms . . . based on the requirements of 20 C.F.R. 404.1529 and 416.929 and SSRs 96-4p and 96-7p." (Tr. 28). The cited regulations specifically instruct an ALJ to consider the "side effects of any medication you

14

take or have taken to alleviate your pain or other symptoms." 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). The Eleventh Circuit has held that sufficient to conclude an ALJ evaluated side effects in making his determination. *Robinson v. Comm'r of Soc. Sec.*, 649 F. App'x 799, 802 (11th Cir. 2016). Additionally, the ALJ's credibility finding — that "the alleged intensity, persistence, duration, and impact on functioning" of her symptoms was not credible — implicitly encompassed Eason's testimony about her side effects, because that testimony is the only evidence of side effects. *See Walker*, 404 F. App'x at 367. Eason affirmatively reported to Dr. Waltz that her medications did not cause side effects, and the record does not reflect any other reports of side effects. (Tr. 827). This is sufficient to support the ALJ choice not to credit Eason's testimony regarding side effects and not providing limitations based on them. *Robinson*, 649 F. App'x at 802. On this record, the ALJ did not err by failing to specifically mention Eason's side effects.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Eason's claim for a period of disability, SSI, and DIB prior to May 1, 2014 is **AFFIRMED**.

DONE this 23rd day of September, 2018.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE